* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part, and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury, giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
3. Travelers Insurance Company was the carrier on the risk for Defendant-Employer.
4. Plaintiff's average weekly wage was $ 164.80.
5. The following items are stipulated into evidence as follows:
 a. Stipulated Exhibit No. 1, the Pre-Trial Agreement,
 b. Stipulated Exhibit No. 2, Plaintiff's medical records,
 c. Stipulated Exhibit No. 3, Plaintiff's responses to Defendant's interrogatories,
 d. Stipulated Exhibit No. 4, Plaintiff's recorded statement.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 39-year-old, right hand dominant female, who had completed the twelfth grade of high school.
2. Plaintiff's prior work history has consisted of customer service, bank teller, food server, cook and cashier at a restaurant, and various positions in sales and office management.
3. On February 1, 2002, Defendant-Employer hired Plaintiff as a part-time cook. Plaintiff worked Defendant-Employer's third shift, 11:00 p.m. to 7:00 a.m., four to five days per week. *Page 3 
On February 9, 2002, Plaintiff was cooking grits and picked up a hot serving spoon, sustaining a severe burn to her right hand. Plaintiff continued to work her shift, and upon returning home, applied burn cream to her hand.
4. The following morning, Plaintiff noticed she had a large blister that had formed in the palm of her hand extending to the side of her hand opposite her thumb. Plaintiff lanced the blister, sterilized the burn and applied a wrap. Plaintiff returned to work.
5. On February 12, 2002, Plaintiff saw her family physician for treatment of her burned hand. Plaintiff was referred to a local physician in Laurinburg, North Carolina and was then referred by that physician to the University of North Carolina Jaycee Burn Center in Chapel Hill, North Carolina.
6. On February 15, 2002, Plaintiff was admitted to the Burn Center and received an antibiotic IV, application of burn cream and pain medication. Plaintiff's hand had a large blister with fluids still intact. Her hand was swollen and red, with an infection in the normal skin surrounding the burn. The range of motion of her hand was extremely poor. Plaintiff was released from the Burn Center on February 16, 2002, and was written out of work.
7. On February 21, 2002, Plaintiff returned to the Burn Center. Plaintiff described her burn as healing, but the healing process had caused the fingers of her right hand to begin to curl. Plaintiff was advised on how to perform home exercise.
8. On March 10, 2002, Plaintiff returned to work at the same or greater wages. Plaintiff testified that her job duties after her return to work caused severe pain in her right hand. She continued to receive follow-up treatment from Dr. Michael Peck at the Burn Center. *Page 4 
On April 11, 2002, Dr. Peck examined Plaintiff. At that time, Plaintiff denied any pain or discomfort and indicated that she had been back to work, performing her regular duties without any problem.
9. On July 9, 2002, Dr. Peck noted that Plaintiff was experiencing increasing pain in the right hand and wrist, which had worsened over the past two weeks. Plaintiff complained of pain starting on the front aspect of her wrist and running up into her right arm. Plaintiff also noted weakness in her right wrist and arm. Upon physical examination, Dr. Peck noted that Plaintiff had good range of motion of the hand and no scarring from the burn, but he was concerned that Plaintiff might be developing carpal tunnel syndrome. On July 9, 2002, Dr. Peck referred Plaintiff to Dr. Gloria Liu, another physician within the Burn Center, for complaints involving numbness in her right hand. Plaintiff had not made complaints of numbness in her right hand to Dr. Peck prior to this date.
10. Plaintiff had previously complained of numbness and pain in her right hand, however, in 1998 and in 2000, for which she was given a wrist brace for relief. Plaintiff had also been treated at the Maxton Family Practice in January 2001, for complaints of numbness in the right arm and on February 5, 2002, four days before her burn injury, she reported generalized joint pain in her hips, knees and both elbows. The medical records indicate that Plaintiff had been diagnosed with fibromyalgia prior to her employment with Defendant-Employer.
11. Dr. Liu saw Plaintiff on July 9, 2002. Upon physical examination, Plaintiff exhibited a positive Tinel's sign in her right upper extremity. Dr. Liu diagnosed possible nerve entrapment at the carpal tunnel area and recommended nerve conduction studies to rule out carpal tunnel syndrome. *Page 5 
On July 19, 2002, Plaintiff underwent a nerve conduction study that was significant for delayed onset latency of the right median motor nerve. The study indicated that Plaintiff had evidence of a mild monomedian neuropathy involving demylienation consistent with mild carpal tunnel syndrome.
12. On July 29, 2002, Plaintiff was cooking at Defendant-Employer's grill when she attempted to flip a chicken breast and felt pain in her right elbow. She was performing her normal duties in a normal manner when this incident occurred. Plaintiff was seen at Scotland Memorial Hospital and diagnosed with epicondylitis.
13. Plaintiff returned to Dr. Liu on September 30, 2002. Plaintiff complained of numbness, tingling and right hand pain and right elbow pain. Dr. Liu diagnosed Plaintiff as having right carpal tunnel syndrome and right lateral epicondylitis at the right elbow. Dr. Liu recommended that Plaintiff remain out of work for approximately six weeks due to severe pain and continue therapy.
14. The September 30, 2002, medical note of Dr. Liu fails to apportion the percentage of Plaintiff's total incapacity to work between her right carpal tunnel syndrome and her right lateral epicondylitis.
15. On September 30, 2002, Dr. Liu advised Plaintiff to obtain a TENS unit for pain control and start anti-inflammatory medications. Plaintiff continued follow-up treatment with Dr. Liu for her carpal tunnel syndrome and right lateral epicondylitis. In March 2003, Dr. Liu recommended that Plaintiff consider acupuncture treatment as well as pain management. Dr. Liu did not prepare a subsequent medical note regarding Plaintiff's ability to work. *Page 6 
16. On April 10, 2003, Dr. Mark Brenner of the Pinehurst Surgical Clinic examined Plaintiff. Dr. Brenner diagnosed Plaintiff with status post second-degree burn to the right hand and carpal tunnel syndrome. Dr. Brenner felt that Plaintiff was approaching maximum medical improvement with regard to her burn and carpal tunnel syndrome and that Plaintiff retained a 5% permanent partial impairment of the right hand due to her burn injury and carpal tunnel syndrome. Dr. Benner recommended that Plaintiff avoid highly repetitious pushing, pulling, gripping, pinching, fingering and also activities that require forceful lifting.
17. In June 2003, Dr. Brenner again saw Plaintiff. Dr. Brenner noted in his medical records that there was no evidence to suggest a reflex sympathetic or regional pain syndrome. He indicated that the pain Plaintiff described was not focused in her hand or right wrist, but was a nonspecific pain in the right upper extremity. Dr. Brenner was unable to causally relate Plaintiff's non-specific pain complaints to her burn injury.
18. On September 16, 2003, Dr. Anthony Hucks-Folliss of Sandhills Neurosurgery saw Plaintiff upon referral by her family physician. Dr. Hucks-Folliss diagnosed Plaintiff as suffering from right sided neck pain, right upper extremity pain in the elbow and wrist pain. Dr. Hucks-Folliss felt that Plaintiff's MRI of March 29, 2003, was consistent with herniated disks at C3-4 and C5-6, without any significant neurological compression. Dr. Hucks-Folliss did not render an opinion on whether Plaintiff's complaints were related to a work related injury or occupational disease.
19. Dr. Peck opined that Plaintiff suffered from carpel tunnel syndrome, which was proximately caused by the February 9, 2002, burn to her hand. Dr. Peck testified that although there were no scientific studies that unequivocally establish a casual relationship between burns and carpal tunnel syndrome, "It has been my experience over the years and the experience of *Page 7 
other burn doctors that there is a relationship." Dr. Peck opined that he could not relate Plaintiff's epicondylitis to her February 9, 2002, injury.
20. Dr. Peck further testified that Plaintiff might not have reached the point of maximum medical improvement with regard to her carpal tunnel syndrome and epicondylitis based upon the last office visit of January 7, 2003, and he was unable to determine whether Plaintiff suffered from any permanent partial impairment as a result of the burn injury.
21. With respect to disability, as of Plaintiff's last treatment with Dr. Liu on January 7, 2003, she was complaining of increased pain from the elbow to the fingers, numbness, tingling and swelling of her hand after use. Dr. Peck did not believe Plaintiff had reached maximum medical improvement as of January 7, 2003, and he could not determine if she sustained any permanent partial disability. At the time of Dr. Benner's evaluation of Plaintiff on April 10, 2003, he was of the opinion that Plaintiff was approaching maximum medical improvement and could return to work with restrictions and that she had a 5% permanent partial impairment to her right hand. The Full Commission gives great weight to Dr. Benner's opinion that Plaintiff sustained a 5% permanent partial impairment to her right hand, since he evaluated Plaintiff after her last visit with Dr. Peck. Based on the greater weight of the evidence, as a result of her burn injury and resulting carpal tunnel syndrome, Plaintiff was temporarily totally disabled from employment from February 15, 2002, through March 10, 2002, and from September 30, 2002, through April 10, 2003. There is insufficient evidence from which to find that Plaintiff made reasonable efforts to find suitable employment after April 10, 2003, when she was released to return to work with restrictions, or that it would have been futile for her to seek suitable employment due to pre-existing educational or vocational limitations. *Page 8 
22. Based on the greater weight of the evidence, Plaintiff's admittedly compensable burn injury to her right hand on February 9, 2002, proximately caused her right carpal tunnel syndrome. The Full Commission gives greater weight to the testimony of Dr. Peck on this issue and finds that Plaintiff's right carpal tunnel syndrome was a direct and natural consequence of her compensable burn to her right hand.
23. Plaintiff has failed to prove by the greater weight of the evidence that the July 29, 2002 incident involving her elbow is causally connected to her injury of February 9, 2002, or that she sustained an injury by accident or developed an occupational disease on July 29, 2002.
24. The parties stipulated that Plaintiff's average weekly wage was $ 164.80.
25. The medical treatment Plaintiff received for her burn injury and carpal tunnel syndrome was reasonably required as a result of her injury, to effect a cure, provide relief, or to lessen her disability.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On February 9, 2002, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the scope and course of her employment with Defendant-Employer resulting in a second-degree burn to her right hand. N.C. Gen. Stat. § 97-2 (6).
2. When the primary injury is shown to have arisen out of an injury by accident, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause. Thus, a subsequent injury is *Page 9 
compensable if it is the direct and natural result of the compensable primary injury. Starr v. Charlotte Paper Co., 8 N.C. App. 604 (1970). As a direct and natural consequence of Plaintiff's burn injury to her hand, she developed carpal tunnel syndrome, which is compensable. Starr v.Charlotte Paper Co., 8 N.C. App. 604 (1970).
3. "The burden is on the employee to show that he is unable to earn the same wages he earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury." Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Here, Plaintiff has established by the greater weight of the evidence that she was temporarily totally disabled from working in any employment beginning February 15, 2002, and continuing through March 10, 2002, and from September 30, 2002, when she was excused from work through April 10, 2003, when Dr. Benner released her with work restrictions. During the above stated periods, Plaintiff was medically excused from work due to her admittedly compensable burn injury of February 9, 2002, and her subsequent development of carpal tunnel syndrome. Plaintiff has not proven by the greater weight of the evidence that she made reasonable efforts to find suitable employment after April 10, 2003, or that it would have *Page 10 
been futile for her to seek suitable employment due to pre-existing educational and vocational limitations. There is no evidence that Plaintiff found suitable employment earning diminished wages.
4. As a result of Plaintiff's compensable injury by accident she is entitled to temporary total disability compensation at the rate of $ 109.87 from February 15, 2002, through March 10, 2002, and from September 30, 2002, through April 10, 2003. N.C. Gen. Stat. § 97-29.
5. Plaintiff's average weekly wage was $ 164.80, yielding a compensation rate of $ 109.87. N.C. Gen. Stat. § 97-2(5).
6. "[A]lthough apportionment may be appropriate when a work-related and a non-compensable condition combine to cause disability, an employee may receive `full compensation for total disability without apportionment when the nature of the employee's total disability makes any attempt at apportionment between work-related and non-work-related causes speculative.' The Commission may also decline to apportion when the record lacks evidence attributing a percentage of the employee's total incapacity to her compensable injury." Konrady v. U.S. Airways,Inc., 165 N.C. App. 620, 599 S.E.2d 593 (2004). Plaintiff became temporarily totally disabled effective September 30, 2002, when Dr. Liu took her out of work for six weeks for a combination of carpal tunnel syndrome and right lateral epicondylitis. The September 30, 2002, medical note of Dr. Liu fails to attribute a percentage of Plaintiff's total incapacity to her right carpal tunnel syndrome or her right lateral epicondylitis. The Full Commission declines to apportion as the record lacks sufficient evidence from which to determine the percentage of Plaintiff's total incapacity, which resulted from her compensable carpal tunnel syndrome. N.C. Gen. Stat. § 97-29. *Page 11 
7. On July 29, 2002, Plaintiff did not sustain an injury by accident to her right elbow arising out of and in the course of her employment with Defendant-Employer. Plaintiff was performing her usual job in her usual way when her elbow pain began, which does not constitute an injury by accident. Poe v. Acme Builders, 69 N.C. App. 147, 149,316 S.E.2d 338, 340 (1984). Plaintiff has also failed to establish that her epicondylitis was a direct and natural consequence of her compensable burn injury or that it was an occupational disease as defined in the Act. Holley v. ACTS, Inc., 357 N.C. 228, 231, 581 S.E. 2d 750, 752
(2003).
8. As a result of her compensable injury, Plaintiff is entitled to payment for all reasonable medical expenses incurred or to be incurred, including treatment for carpal tunnel syndrome for so long as such treatment is reasonably required to effect a cure, provide relief, or tends to lessen Plaintiff's disability. N.C. Gen. Stat. § 97-25.
9. Plaintiff has a 5% permanent partial impairment to her right hand as a result of her compensable work-related injury for which she is entitled to permanent partial disability compensation for 10 weeks at the rate of $ 109.87 per week. N.C. Gen. Stat. § 97-31.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at the rate of $ 109.87 per week for the period from February 15, 2002, through March 10, 2002, and from September 30, 2002, through April 10, 2003. *Page 12 
2. Defendants shall pay to Plaintiff permanent partial disability compensation for 10 weeks at the rate of $ 109.87 per week in a lump sum for the 5% rating to her right hand.
3. Plaintiff's claim for indemnity compensation and medical expenses for epicondylitis arising from the incident on July 29, 2002, is hereby DENIED.
4. Defendants shall pay all reasonable medical expenses incurred or to be incurred by Plaintiff as a result of her burn injury and resulting carpal tunnel syndrome for so long as such treatment is reasonably required to effect a cure, provide relief, or tends to lessen Plaintiff's disability.
5. An attorney's fee of 25% percent of the compensation awarded to Plaintiff herein is approved for Plaintiff's attorney, payable in a lump sum.
6. Defendants shall pay the costs
This the __ day of May 2007.
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING: S/______________ BUCK LATTIMORE CHAIRMAN
 S/_______________ PAMELA T. YOUNG COMMISSIONER *Page 1